IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| MICHAEL MAYFIELD, on behalf of himself and all others similarly situated,<br>        Plaintiff,<br><br>                    v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br>        Defendant. | Civil Action No.<br>1:19-cv-02425-SDG |

## ORDER

This matter is before the Court on Defendant Ace American Insurance Company's amended motion to dismiss and strike class allegations [ECF 60]. For the following reasons, Ace's motion is **DENIED**.

## I.   BACKGROUND

### A. Facts

The following facts are treated as true for the purposes of this motion.[1] As part of Plaintiff Michael Mayfield's employment with Delta Airlines, he is insured

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

under a group insurance policy, No. ADD NO4983233, issued by Ace.[2] The Policy provides accidental death and dismemberment insurance ("AD&D"), which covers Mayfield if either he or his spouse suffer a "covered loss."[3] A "covered loss" is defined to include the accidental loss of life.[4] To obtain benefits under the Policy, an insured "must follow the claims procedures under the applicable Insurance Contract, which may require the individual to complete, sign and submit a written claim on the insurer's forms."[5] To initiate a claim, the Policy provides:

> **Notice Of Claim:** A claimant must give US or Our authorized representative written (or authorized electronic or telephonic) notice of claim within 90 days after any loss covered by the Policy occurs. If notice cannot be given within that time, it must be given as soon as reasonably possible. This notice should identify the Covered Person and the Policy Number.

> **Claim Forms:** Upon receiving written notice of claim, We will send claim forms to the claimant within 10 days. If We do not furnish such claim forms, the claimant will satisfy the requirements of written proof of loss by sending the written (or authorized electronic or

---

[2]    ECF 1, ¶ 10.

[3]    *Id*. ¶ 13.

[4]    *Id*.

[5]    ECF 60-1, at 9.

telephonic) proof as shown below. The proof must describe the occurrence, extent and nature of the loss.[6]

The Policy also contains a provision concerning payable interest on a claim for benefits ("Interest Clause"):

> **Claims Information.** Within 15 working days of receipt of proof of loss, We will mail Covered Person a letter or notice explaining why a claim or any part has not been paid. Also, the letter or notice will include a list of any information needed to process the claim. When We have received this additional information, We have 15 working days to either pay or deny the claim. We will explain Our decision to the Covered Person.
>
> If We do not meet all of the above conditions, We will pay the Covered Person 18% interest per year on the benefits due. This applies only to benefits due under the Policy for which the above procedure has not been followed.[7]

On April 21, 2016, Mayfield's wife suffered a sudden cardiac death as the result of the interaction of prescribed medications.[8] On August 8, 2016, Mayfield faxed a Proof of Claim form to Ace for the monetary benefits payable under the Policy due

---

[6]   The terms "We" and "US" — as used in the Policy — are given the meaning subscribed to them in the Policy and both refer to Ace as the issuer of the Policy.

[7]   ECF 1, at ¶ 14; ECF 60-3, at 14; ECF 60-4 at 11–12.

[8]   ECF 1, ¶ 16.

to his wife's death.[9] Ace sent Mayfield an acknowledgment letter on August 9, 2016.[10] Ace received the last set of Mayfield's wife's medical records on January 5, 2017.[11]

On March 20, 2017 — 225 days after receiving the Proof of Claim and 74 days after receiving all the requested medical records — Ace denied Mayfield's claim.[12] After receiving all the information Ace used to support its denial of his claim, Mayfield realized Ace had sent Mayfield's wife's medical records to an outside "independent medical reviewer," who provided Ace with an unsigned, two-page report concluding his wife's death was a "self-inflicted" overdose.[13] Despite Mayfield's requests, Ace refused to disclose the reviewer's identity.[14]

On September 13, 2017, Mayfield appealed Ace's denial, asserting that the "independent medical review" was unsupported by medical science and Ace's refusal to disclose the identity of the medical reviewer was improper.[15]

---

9    *Id.* ¶ 17.

10   *Id.* ¶ 18.

11   *Id.* ¶¶ 19–23.

12   *Id.* ¶¶ 28, 30.

13   *Id.* ¶¶ 26–27, 32, 34.

14   *Id.* ¶ 36.

15   *Id.* ¶ 37.

On September 25, 2017, Ace denied Mayfield's first appeal.[16] On March 22, 2018, Mayfield submitted a second-level appeal of Ace's denial.[17] On April 11, 2018, Ace acknowledged that Mayfield's second-level appeal was being forwarded to the ERISA appeals committee at Chubb.[18] On May 1, 2018, Ace informed Mayfield that his claim was payable, and on May 4, 2018, Mayfield received payment of his claim in the amount of $1,229,250.00.[19] Ace's payment came 634 days after receiving Mayfield's Proof of Loss and 484 days after receiving Mayfield's wife's medical records.[20]

Upon notice that his AD&D claim would be approved, Mayfield emailed Ace requesting information about the payment, including the amount of interest due because of Ace's alleged delay in approving Mayfield's claim.[21] On May 16,

---

[16]  *Id*. ¶ 38.

[17]  *Id*. ¶ 39.

[18]  *Id*. ¶ 40. According to the Complaint, in 2016, "Ace's parent company, Ace Limited, purchased Chubb Corporation . . . . After the purchase was completed, the name Chubb was adopted for the new combined corporate entity. . . . At all times relevant hereto, Defendant Ace and/or Chubb provided insurance coverages to individuals, including the employees of Delta Airlines." *Id*. ¶¶ 4–5.

[19]  *Id*. ¶¶ 42–43.

[20]  *Id*. ¶ 45.

[21]  *Id*. ¶ 46.

2018, Ace responded, stating there was no basis for a payment of interest and its adjudication of Mayfield's claim complied with the ERISA claim procedures.[22] On May 24, 2018, Mayfield again wrote to Ace detailing the perceived issues with the adjudication of his claim and requesting the amount of interest due.[23] Despite numerous requests, Mayfield did not receive a copy of the entire Policy until June 13, 2018.[24] On June 18, 2018, Ace again denied Mayfield's request for interest on his benefits.[25]

On November 26, 2018, Mayfield filed his putative class action Complaint in the United States District Court for the Western District of Washington.[26] Mayfield asserted a claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as a claim for attorney's fees and costs under §502(g)(1), against Ace.[27] Mayfield also seeks to represent a proposed class of people that include:

---

[22]  *Id*. ¶ 49.

[23]  *Id*. ¶ 50–51.

[24]  *Id.*¶ 52.

[25]  *Id*. ¶ 53.

[26]  *See generally id*.

[27]  *Id*.

All persons who:

(1)     made claims under a group accident insurance policy issued by Ace and/or CHUBB as part of an ERISA benefit plan that contained a provision materially identical to that quoted below:

> **Claims Information.** Within 15 working days of receipt of proof of loss, We will mail Covered Person a letter or notice explaining why a claim or any part has not been paid.  Also, the letter or notice will include a list of any information needed to process the claim.  When We have received this additional information, We have 15 working days to either pay or deny the claim.  We will explain Our decision to the Covered Person.
>
> If We do not meet all of the above conditions, We will pay the Covered Person 18% interest per year on the benefits due.  This applies only to benefits due under the Policy for which the above procedure has not been followed;

(2)     whose claims were not paid or denied by Ace and/or CHUBB within the deadline set forth in the provision from the date the company or its agents received all information listed in the notice or letter to the claimant as needed to process the claims; and

(3)     who were not paid interest on benefits due and ultimately paid.[28]

---

[28]   *Id*. ¶ 55.

On May 28, 2019, the action was transferred to this Court.[29] On August 16, 2019, Ace filed the instant motion to dismiss or strike class allegations.[30] On August 30, 2019, Mayfield filed his response.[31] Ace filed its reply on September 13, 2019.[32] The Court heard oral argument on Ace's motion on November 12, 2019.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010)

---

[29]    ECF 46.

[30]    ECF 60.

[31]    ECF 63.

[32]    ECF 66.

(*quoting Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (*quoting Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

### A.   Mayfield's Complaint Is Not Barred by the Administrative Exhaustion Doctrine.

Ace contends Mayfield's Complaint must be dismissed because he failed to properly administratively exhaust his claim. The law in the Eleventh Circuit is that "plaintiffs must exhaust their administrative remedies under a covered benefits

plan prior to bringing an ERISA claim in federal court." *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (*citing Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992)). *See also Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."). This exhaustion requirement "applies to actions in which the plaintiff sues individually as well as actions where the plaintiff sues as a representative of a putative class." *Spivey v. S. Co.*, 427 F. Supp. 2d 1144, 1148 (N.D. Ga. 2006) (*citing In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1295 (S.D. Fla. 2003)). The requirement "is not found in the ERISA statute itself," but is "a court-imposed, policy-based requirement." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). The stated policy goals of the exhaustion requirement are to:

> [R]educe the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985).

Since it is a judicial—not statutory—construct, the Court has the "discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate . . . or where a claimant is denied meaningful access to the administrative review scheme in place." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). The Court's authority to "apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision." *Bickley*, 461 F.3d at 1328. *See also Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) (same); *Spivey*, 427 F. Supp. 2d at 1148 ("Ultimately, the decision whether to enforce the exhaustion requirement resides within the district court's discretion.").

Ace argues Mayfield's claim is barred by the exhaustion doctrine because Mayfield "does not allege that he has exhausted administrative remedies with respect to his claim for interest," and the claim "has not been subjected to the [Policy's] formal administrative review process."[33] Ace does not contend Mayfield failed to fully comply with the multi-tiered administrative process in pursuit of his AD&D benefits claim. Indeed, Mayfield filed his claim, provided Ace with a bevy of information, and pursued two subsequent appeals over the course of

---

[33]   ECF 60, at 10.

21 months.[34] Instead, Ace contends Mayfield's entitlement to interest payable on those AD&D benefits, as expressly provided for by the Interest Clause, is a separate claim Mayfield has not exhausted.[35]

The Court does not agree. As a threshold matter, Mayfield's claims for AD&D benefits and interest owed on those benefits are not separate claims. It is undisputed that Mayfield duly complied with the administrative process for his AD&D benefits claim. Any interest owed by Ace due to its alleged delay in adjudicating Mayfield's benefits claim is not detached from its ultimate decision to approve Mayfield's claim. Rather, the interest owed flows naturally from Ace's allegedly delayed approval. Ace acknowledges as much, stating that Mayfield's request for interest "was not treated as a separate claim for an additional benefit under the Policy."[36]

The Court's conclusion is augmented by the fact that Ace possessed all the relevant information it needed to decide whether Mayfield was entitled to interest when making the determination to pay AD&D benefits. The plain language of Ace's denial letters shows it fully investigated and reviewed Mayfield's requests

---

[34]   *See* ECF 60-2, at 56–60 (outlining required administrative review process).

[35]   ECF 60, at 10–11.

[36]   ECF 66, at 6.

and rendered an informed decision.[37] Courts in this Circuit have not required further redundant administrative exhaustion under similar circumstances. *See, e.g., Coleman v. Alcatel-Lucent USA, Inc.*, No. 2:16-cv-00108-SGC, 2017 WL 7038502, at *12 (N.D. Ala. Sept. 1, 2017) ("Plaintiff's May 11 letter contained everything [defendants] needed to process his claim. Therefore, the court finds Plaintiff has provided sufficient information to overcome [d]efendants' assertion that he has not adequately pleaded futility.").

Ace further argues Mayfield did not adequately plead administrative exhaustion in his Complaint. While it is true that "ERISA plaintiffs are required to plead exhaustion in their complaint,"[38] the "law in this Circuit only mandates the plaintiff to plea[d] exhaustion beyond mere 'all conditions precedent were satisfied' statement." *In re Managed Care Litig.*, 595 F. Supp. at 1353. In *Hoak v.*

---

[37] ECF 60-10, at 2 (first denial of interest) ("Based on a review of the handling of this claim . . . there is no basis for the payment of interest or attorney's fees. . . . A review of this claim reveals the following . . . . The claims adjudication outlined above is in compliance with the applicable ERISA claims procedures."); ECF 60-11 (second denial of interest) ("As we have outlined in our prior letter, based on our review of this claim, there was no improper delay and the claim was paid timely based on the information that was provided.").

[38] *Nat'l Renal All., LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 598 F. Supp. 2d 1344, 1356 (N.D. Ga. 2009).

*Ledford*, No. 1:15-cv-03983-AT, 2016 WL 8948417, at *4 (N.D. Ga. Sept. 27, 2016),

this Court, in resolving a similar issue, stated:

> Defendants appear to presume that Plaintiffs must prove exhaustion at the motion to dismiss stage. However, the Eleventh Circuit has only expressly required plaintiffs to properly plead exhaustion to survive dismissal. . . . To properly plead exhaustion, plaintiffs must specify both the action they took to exhaust their administrative remedies, and the outcome of that action.

Mayfield's Complaint easily meets this standard.

Mayfield's pleading describes, with specific factual detail including dates and names, the steps he undertook to submit his request for interest to Ace after the approval of his AD&D benefits. In sum, Mayfield alleges: (1) he made an initial email request for the calculation of interest on May 2, 2018; (2) Ace denied his initial request on May 3, 2018; (3) he made a second email request for interest on May 16, 2018; and (4) Ace denied his second request on June 18, 2018.[39] Contrary to Ace's contentions, Mayfield is not required to affirmatively prove exhaustion at this stage. The Court is satisfied that Mayfield's specific allegations in the Complaint exceed the required threshold in this Circuit. *Coleman*, 2017 WL 7038502, at *12, *14 ("Plaintiff has provided detailed allegations and supporting

---

[39]   ECF 1, ¶¶ 46–53.

documents regarding his attempts to present and exhaust his claim. . . . [T]he court finds Plaintiff has adequately alleged that he did pursue his administrative remedies.").

Ace, nonetheless, points to Mayfield's two emails concerning the payment of interest as insufficient to initiate a claim under the Policy.[40] In *National Renal Alliance*, 598 F. Supp. 2d at 1356, this Court stated:

> While Plaintiffs may not have followed a formal exhaustion process, it is clear that Blue Cross has had an opportunity to understand National Renal's grievance and consider any response it might want to make. Under these circumstances, the court finds that to require National Renal to go back now and engage in the exhaustion process set forth in the policy would be an empty exercise in legal formalism and would not further the purposes of the exhaustion requirement. . . . Therefore, the court will not dismiss Plaintiffs' claims for failure to exhaust administrative remedies.

(internal punctuations omitted).

While Mayfield's two emails requesting that Ace determine the amount of interest payable on his claim may not have followed the Policy's claim initiation process to the letter, this is not enough to bar his claim based on the exhaustion doctrine. Reading the plain language of Ace's two denial letters, it clearly had

---

40   ECF 60, at 10.

ample time and a meaningful opportunity to review and consider on the merits Mayfield's demand for interest—including all provided information and Ace's adjudication of the AD&D demand claim—and deny it twice.[41] As in *National Renal Alliance*, to require Mayfield to go back and demand Ace pay him interest on his claim for a third time would not further—and would, instead, be contrary to— the stated policy goals of the exhaustion requirement. *See Mason*, 763 F.2d at 1227; *see also Hoak*, 2016 WL 8948417, at *6 ("Mr. Hoak has already gone through two rounds of administrative procedure, giving Defendants ample opportunity to consider his claim. . . . Requiring him to go back now and engage in further administrative review would be an empty exercise in legal formalism.") (internal punctuation omitted).

Ace makes much of the fact that Mayfield simply requested "interest due on [the AD&D benefits] for the delay in payment" in his emails without specifically citing or referencing the Interest Clause.[42] This argument is, likewise, unpersuasive. The exhaustion requirement "does not require either issue or theory exhaustion; it only required claim exhaustion." *Lieberman v. United Healthcare Ins. Co.*, No. 09-81050-CIV, 2010 WL 903260, at *3 (S.D. Fla. Mar. 10, 2010) ("Hence, a

---

[41]   *See supra* note 37.

[42]   ECF 60, at 11; ECF 60-9, at 2.

plaintiff's subsequent decision to raise a new issue before a district court does not retroactively erase his prior effective exhaustion of administrative remedies.") (*citing Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 632 (9th Cir. 2008); *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984) (internal citations omitted)). As stated above, Mayfield has sufficiently presented his request for interest to Ace. It is irrelevant whether those requests were accompanied by a talismanic "Interest Clause" moniker.

What is more, Ace's argument belies common sense. Mayfield alleges that, despite numerous inquiries, he was not aware of the Interest Clause until he was provided with a full copy of the Policy on June 13, 2018—a date after Mayfield had already requested interest, been denied, and appealed that denial.[43] It would be irrational to require Mayfield to cite to a provision in the Policy without access to the full Policy or knowledge of the Interest Clause. These facts are sufficient to excuse further compliance with the exhaustion requirement. *See, e.g., Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846–47 (11th Cir. 1990) ("Until Curry could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he

---

[43]   ECF 1, ¶ 52.

was refused meaningful access to those procedures. . . . When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion."), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001); *Coleman*, 2017 WL 7038502, at *13–14 ("Plaintiff attempted over the course of approximately two months to exercise his right to information which should have been provided automatically . . . . [Defendant's] failure to respond to Plaintiff's communications in a meaningful way is an adequate basis for excusing the exhaustion requirements.").

Therefore, since Mayfield's Complaint is not barred by the exhaustion doctrine, Ace's motion to dismiss is **DENIED**.[44]

### B.   Mayfield's Class Allegations Should Not Be Stricken at this Stage.

In the alternative, Ace requests that the Court strike Mayfield's class allegations because allegations "relating to claims handling or alleged failures to pay benefits are not appropriate for class adjudication and do not satisfy the

---

[44]  Ace also requests dismissal of Mayfield's claims for attorney's fees and litigation costs because he has not achieved "some degree of success on the merits." [ECF 60, at 13.] In light of this Court's Order denying Ace's motion to dismiss, this argument is premature. Therefore, Mayfield may pursue his claims for attorney's fees and litigation costs in this action.

requirements of Rule 23."[45] Mayfield has not yet moved for class certification. Indeed, the parties have not even begun discovery. Nonetheless, Ace asks the Court to consider the merits of Mayfield's class allegations under Federal Rule of Civil Procedure 23 at this early juncture.

Since the "striking [of] class allegations at the pleading stage is the functional equivalent of denying class certification," the Court "should not determine the appropriateness of class action treatment at the motion to dismiss stage where the class certification issue cannot be readily resolved by the complaint alone." *Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1313 (N.D. Ga. 2016) (*citing Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008)). *See also Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016) ("[T]he determination usually should be predicated on more information than the complaint itself affords."). Dismissal of class allegations at the pleading stage "is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." *Fitzer v. Am. Inst. of Baking*, No. CV 209-169, 2016 WL 4223612, at *11

---

[45]   ECF 60, at 16.

(S.D. Ga. Aug. 9, 2016)). *See also Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014) (stating such motions are "drastic remedy" and viewed "with disfavor"). Indeed, courts in this Circuit routinely find such motions at this stage of proceedings to be "premature, preferring instead to address issues raised in the motion in a response filed in opposition to a motion for class certification." *Snover v. Publix Super Markets, Inc.*, No. 8:15-cv-2434-T-26-AAS, 2016 WL 11581804, at *1 (M.D. Fla. Oct. 24, 2016).

To be clear, authority exists in this Circuit that class allegations can be dismissed at the pleading stage pursuant to Rule 23 before a motion to certify is filed. *See, e.g., Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-cv-897-T-30-TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010); *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995). However, recent decisions from courts in this Circuit have taken the opposite view, choosing to instead "view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike." *Gill-Samuel*, 298 F.R.D. at 700. *See also Snover*, 2016 WL 11581804, at *1. The Court agrees with the latter approach, as "it does not necessarily follow that the presence of class allegations in a motion to strike somehow alters Rule 12(f)'s clear legal standard for striking material from a

pleading." *Desmond v. Citimortgage, Inc.*, No. 1:12-cv-23088, 2015 WL 845571, at *5 (S.D. Fla. Feb. 25, 2015). Thus, the Court will treat Ace's motion to strike pursuant to Rule 12(f), not Rule 23.

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Mayfield seeks to represent a class of people who "made claims under a group insurance policy issued by Ace and/or Chubb as part of an ERISA benefit plan" containing the Interest Clause, but were not paid interest on the untimely payment of benefits.[46] Ace primarily argues that Mayfield's class allegations should be stricken because "the actions of Ace with respect to each individual putative class member will require a detailed and individual examination of the specific facts relating only to that class member."[47] Ace provides a laundry list of individualized questions that allegedly render this putative ERISA class action facially insufficient at the starting gate.[48]

However, on review of the class allegations, the Court concludes that a class would not be impossible to certify. Mayfield points to a litany of decisions that

---

[46]   ECF 1, ¶ 55.

[47]   ECF 60, at 20.

[48]   *Id.* at 21.

have certified ERISA class actions based on a common, predominate question of contract interpretation that applies equally to all class members.[49] This Court's decisions are in agreement. *See, e.g.*, *Hoak*, 2016 WL 8948417, at *6 ("[A]n individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans.") (*citing Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998)). Moreover, there is nothing redundant, immaterial, impertinent, or scandalous about the class allegations. Ace does not contend otherwise.

Since none of the concerns listed in Rule 12(f) are present, the class allegations are best tested under Rule 23 on a motion for class certification after the collection and presentation of evidence. *McCabe v. Daimler AG*, No. 1:12-cv-2494-TCB, 2013 WL 6283657, at *1 (N.D. Ga. Dec. 2, 2013) ("[T]his motion [to strike class allegations] is premature and the Court will wait until a motion for class certification is filed to determine whether this case can proceed as a class action. . . . The shape and form of a class action evolves only through the process

---

[49]   ECF 63, at 23 (collecting cases).

of discovery, and it is premature to rule on class certification before the claim has taken form.") (internal punctuation omitted).

Thus, since it is inappropriate to make a determination regarding class certification at this time, Ace's motion to strike is **DENIED**.

## IV.    CONCLUSION

Based on the foregoing, Ace's amended motion to dismiss and strike class allegations [ECF 60] is **DENIED**. Ace shall file its answer to the Complaint within 14 days from entry of this Order. The parties shall submit a revised Joint Preliminary Report and Discovery Plan within 14 days from the date Ace files its answer. Discovery will commence 30 days after Ace files its answer.

**SO ORDERED** this the 19th day of March 2020.

_____
Steven D. Grimberg
United States District Court Judge